McLEAN COUNTY COAL COMPANY
v.
JOHN McVEY, ADMINISTRATOR.

*Master and Servant—Negligence of Master—Personal Injuries—Fellow-servant—Evidence—Instructions.*

1. Upon the case presented, the jury were justified by the evidence in finding that the post, the fall of which killed plaintiff's intestate, was improperly secured.

2. The negligence complained of was not that of a fellow-servant of deceased.

3. Exceptions to instructions overruled.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. STEVENSON & EWING, for appellant.

Messrs. BENJAMIN & MORRISSEY and T. C. KERRICK, for appellee.

CONGER, P. J.   Joseph McVey, appellee's intestate and son, was killed on August 18, 1888, in the mine of appellant, while at work in its employ.   He was hired by his father to the appellant for the purpose of greasing cars.   He began work June 27 or 28, 1888, and was placed at work for which he was hired, greasing cars.   He was seventeen years old, and had worked in the mine some six or seven weeks at the time he was killed.

When he commenced work he was placed under the orders and in charge of one Hall, the foreman having charge of the boys at work about the mouth of the shaft.   On the day of the accident the shaft shut down about one o'clock in the afternoon, when the regular work of deceased would cease for the day.   The deceased and other boys requested of Hall

work for the remainder of the day.  Hall took deceased back something like one thousand feet into the mine, and with two other young boys, two older ones and himself went to work in cleaning up one of the roadways of the mine, and putting in what witnesses term " lagging," which is placing poles behind the posts  at the side of the roadway, and shoveling the loose dirt and debris in the roadway back behind the poles.  Appellee, the father of deceased, did not know of his son being sent to assist in this work.    While engaged at this work, and while Hall was engaged in picking out a place behind one of the side posts in which to insert the poles, one of the posts at the side of the roadway, from some cause, suddenly fell forward into the roadway, and upon deceased, crushing his skull and producing almost immediate death.

One of the questions of fact most sharply contested was, whether this post was properly fastened and secured.  These side posts were about six by eight inches, placed at the side of the roadway with a timber called a collar, somewhat larger, extending across the roadway supported by the side posts, and the whole intended to support the roof of the roadway.  In this roadway there was no notch cut in the collar, or cleat nailed underneath, to keep the top of the side post in place, but a wedge was driven in between the top of the posts and the bottom of the cellar, by which the collar was driven up against the roof, and reliance was placed on the constant and downward pressure of the roof to keep the wedge tight and the side posts in their place.   Evidence was given to the jury to show that this method was the best known, while it was insisted by appellee, and evidence offered to support such theory, that it was not a good method, but that there should either have been a notch cut in the collar making a shoulder, or a cleat nailed to the collar to prevent the side posts, when loose from any cause, from falling out into the roadway.

Without any practical knowledge upon the subject, our own judgment would lead us, as it did the jury, to the conclusion that appellee's theory is the more reasonable, and better sustained by the evidence.  By using wedges, if they become loose from any cause it would not be discovered without a

close inspection of each one, and there would be nothing to prevent these side posts from falling into the roadway whenever pressure from the side was sufficient to overcome their inertia.

It is insisted by appellant that the pressure from above increases so long as the roof settles, and is so constant as to make wedging the better method; but in this case we find that the roof had ceased settling, or from some other cause the pressure had been entirely removed from this post, with nothing to hold it from falling, and that the wedge, upon which reliance was placed for safety, only operated to deceive one looking at it, into a false security. It is also insisted by appellant that to cut a notch in the collar, making a shoulder to hold the side posts, weakens it. This is true, but the collar could be made large enough to retain sufficient strength when so notched.

Under all the evidence in the case we can not say that the jury were not fully justified in reaching the conclusion that appellant was guilty of negligence in this particular.

The question whether deceased, under his employment, was expected to do other work than greasing cars, and whether the work of lagging was more dangerous than that of greasing, are both controverted. It would serve no good purpose to give the evidence upon these points. We have carefully examined it and feel unwilling to disturb the finding of the jury upon them.

It is insisted that Hall and deceased were fellow-servants. If this were conceded, we fail to see wherein it would benefit appellant. The negligence charged against appellant by the declaration is two-fold. First, in requiring or permitting an inexperienced boy of seventeen to undertake work of a more dangerous character than that for which he was employed, and secondly, in negligently and insecurely fastening the post which fell upon him. When Hall, as foreman, either directed or permitted deceased to enter upon the work of lagging, he represented the appellant company, and the negligence charged in not properly securing the posts or props, is also the negligence of appellant, for the evidence does not show what particular individual did the work.

McLean County Coal Co. v. McVey.

Objection is made to the following instruction:

"The court instructs the jury, that it was the duty of the defendant to use reasonable diligence to keep the roadway in question protected by upright posts and cross-beams, reasonably, firmly and securely set, or by other reasonable means to guard against the bursting and falling in of the sides of said roadway; and if the jury believe from the evidence that the defendant failed to perform such duty, and that by reason of its negligence in that regard one of said upright posts was allowed to become and remain insecure, loose and in a dangerous condition, and unfit to protect said roadway, by reason whereof the deceased, Joseph McVey, while exercising reasonable care on his part, was struck by said post and received the fatal injury complained of, then you should find for the plaintiff, if you further believe from the evidence that by reason of the death of said Joseph McVey his parents or next of kin sustained any pecuniary loss."

It is said this instruction entirely omits the proposition that the post was *apparently* secure, and it therefore may have been but an accident.

We think the instruction plainly tells the jury that it was the duty of appellant to use reasonable diligence in protecting the roadway, and if it failed in so doing, by reason whereof the injury occurred, it would be liable, and we are satisfied with it.

The latter part of the third instruction which is, "You are further instructed that in making such estimate you are not limited to the earnings of the said Joseph McVey until he should arrive at the age of twenty-one years, but may take into consideration every reasonable expectation such parents and next of kin may have had, of pecuniary benefit or advantage from the continuance of his life, so far as the same shall be shown by the evidence in this case," is objected to, but we think the principle announced in it is contained in City of Chicago v. Keefe, 114 Ill. 222. After carefully considering the whole case, we feel compelled to sustain the verdict of the jury. The judgment of the Circuit Court will be affirmed. *Judgment affirmed.*